**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

|   |   |   |
|---|---|---|
| <u>Appeal of 232511 Investments Ltd.</u><br><u>d/b/a Stowe Highlands</u> | }<br>}<br>}<br>} | Docket No. 67-4-04 Vtec |

**<u>Decision and Order on Cross-Motions for Summary Judgment</u>**

Appellant, 232511 Investments Ltd., doing business as Stowe Highlands (Stowe Highlands), appeals the Town of Stowe Development Review Board's (DRB) denial of a combined subdivision and conditional use permit (BA 10-115/S-03-38), dated May 13, 2004. By its application, Stowe Highlands, sought to amend its Resort Planned Unit Development (Resort PUD) permit to eliminate the inn or hotel element, and to merge Parcel 1 with Lots 21, 22, and 23 to form a new 24.3+/- acre parcel that would then be subdivided into fourteen lots for clustered residential dwelling units and open space.

This appeal is "on the record" because the Town has adopted and implemented the procedures necessary for such appeals. Stowe Highlands[1] is represented by Harold B. Stevens, Esq. The Town is represented by Amanda S. E. Lafferty, Esq. The sixteen Interested Persons are all neighboring landowners within the Resort PUD.

Both Stowe Highlands and the Town have filed motions for summary judgment on whether Stowe Highlands can proceed with its application to construct clustered residential units on the consolidated and re-subdivided Parcel 1 and Lots 21–23 in lieu of a hotel or inn.

The parties have submitted the merits of this appeal by cross-motions for summary judgment on Questions 1, 2, 3, and 5 of Appellant's Statement of Questions Presented. The questions presented for our determination may be summarized as follows:

(a) Must a Resort PUD include a hotel, inn, transient units or other resort facilities;

(b) Does any permit condition require that a hotel or an inn be built on Parcel 1;

(c) Are clustered residential units permissible in a Resort PUD; and

(d) Do other property owners in the Resort PUD, who purchased their lots from Stowe Highlands or its predecessors, need to be co-applicants for the pending amendment applications?

These four issues are addressed in this Decision. Applicant's remaining questions presented are not the subject of these summary judgment motions.

**Factual Background**

Since the Town has implemented procedures for an "on the record" appeal, these facts are undisputed and culled from the record on appeal, including the Findings of Fact of the DRB:

1. Stowe Highlands submitted its application (BA 10-115/S-03-38) to amend the Stowe Club Highlands Resort Planned Unit Development (Resort PUD) so it may merge Parcel 1 and Lots 21, 22, and 23 to form a new 24.3+/- acre parcel. The applicant also requested authority to re-subdivide the merged parcel into fourteen lots to construct "Village Homes" at the corner of Country Club Loop and Sinclair Drive.

2. The consolidation of lots occurs at the same location where Stowe Highlands and its predecessors originally obtained permits for an inn, restaurant, lounge, and parking lot (Zoning Permit No. BA 11-250-1). After being granted a permit extension in 1995, Stowe Highlands allowed the permit to expire on October 30, 1999.

3. These parcels are part of a larger, 236+/- acre property in the Agricultural and Rural Residential 3 zoning district (RR3 District). On January 7, 1985, the Town authorized a Resort PUD as a conditional use in the RR3 District with enough density for a one hundred unit hotel, a conference center, and seventy-eight residential units.

4. Since that approval, Stowe Highlands or its predecessors have returned to the DRB and Planning Commission on numerous occasions to modify the Resort PUD, including downsizing the hotel component to a thirty unit inn (twenty-one original units, and nine to be added later) with a restaurant, lounge, and conference center. The Town Board and Planning Commission granted the requested modifications, as well as modifications regarding various lot sizes, the type of housing to be constructed, and the siting and character of open space within the Resort PUD with various conditions.

5. Stowe Highlands or its predecessors have sold off many of the residential lots within the Resort PUD. Stowe Highlands still owns scattered lots in the development, including a number of townhouse units and the lots and Parcel 1 that Stowe Highlands wishes to consolidate.

6.      Over the course of development, Appellant has managed to reserve a number of housing units out of the original allotment for a one hundred unit hotel and seventy-eight residential units by consolidating lots and by dedicating a twenty-two acre lot to agricultural open space. See In re Stowe Club Highlands, 166 Vt. 33 (1996) (preventing Stowe Highlands from building on the twenty-two acre Meadow Lot due to an abutting landowner's reliance on a permit condition that the lot would be dedicated to agricultural open space); In re Stowe Club Highlands, 164 Vt. 272 (1995) (prohibiting the construction of a house on the Meadow Lot because its footprint would lie within a 200 foot setback applicable to the entire Stowe Club Highlands Resort PUD).

7.      Parcel 1 and Lots 21, 22, and 23 are currently unimproved, except that the utilities for the proposed inn and the three residential lots have been installed. These utilities would be used to serve the newly configured lots if a permit is granted.

8.      The fourteen newly subdivided lots are proposed to range in size from a half acre to three acres, and will include almost four acres of open space, all in a clustered residential design to maximize open space.

## Discussion

Stowe Highlands questions on appeal whether a Resort PUD under section 18.3 of the Zoning Regulations needs to include a hotel, an inn, transient units, or resort facilities. "A planned unit development is a zoning district in which a planned mix of residential, commercial, and even industrial uses is sanctioned subject to restrictions calculated to achieve compatible and efficient use of land." K. Young, Anderson's American Law of Zoning § 11.12 (4th ed. 1996).

In the RR3 District, the Regulations require a minimum lot size of three acres. § 6.5(2). The Stowe Club is a Resort PUD, which is a conditional use in the RR3 District. § 6.2(1)(M). In designating Stowe Club a Resort PUD, the DRB granted Stowe Highlands the benefit of building on lots smaller than three acres, in exchange for various benefits to the greater community, including an inn or a hotel, the further development of multiple uses, and the preservation of maximum open space. § 18(2). Stowe Highlands now asks this Court to approve a change in the development pattern which would enable the construction of additional clustered housing in place of the planned inn, thereby abolishing one of the intended benefits of granting the Resort PUD designation. If the Zoning Regulations require an inn, hotel, or other transient units in a

Resort PUD, however, Stowe Highlands would be foreclosed from building homes on the consolidated Parcel 1 and Lots 21–23, at least until the entire Resort PUD was re-zoned.

Ordinances are to be interpreted according to the basic rules of statutory construction and enforced in accordance with their plain meaning. Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 525 (1999). If the plain meaning "resolves the conflict without doing violence to the legislative scheme, there is no need to go further . . . ." Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986).

To determine an answer to Appellant's Question 1, we read section 18.3, governing Resort PUDs, in conjunction with section 2, the definitions section. Our interpretation is that the Regulations contemplate a hotel, inn, or other lodging for transients as a necessary component of a Resort PUD.

The purpose of the Resort PUD is "to allow a large resort . . . to be developed for the purpose of providing housing, recreation and services for its transient guests and other allowed uses." § 18.3. A "resort" is defined as, "a lodging facility for transient guests where the primary attraction is recreational features or activities." § 2(112) (emphasis added). Section 2 also defines "transient" as, "any person staying for a short time only and whose permanent address for legal purposes is not the lodging or dwelling unit occupied by such visitor or person." § 2(146). Therefore, because a "resort" is lodging for those staying a short time, the regulatory scheme for a Resort PUD contemplates that either an inn, a hotel, or lodging for transients is a necessary component

The hotel component of the development was essential to granting Stowe Highlands' predecessors the benefits of the Resort PUD designation. At the first Joint Planning Commission and Board of Adjustment meeting where the zoning of Stowe Highlands' property was discussed, a member of the Board, Mr. Merrill, stated, "[the hotel] is the integral part [of] considering the whole thing under the Resort PUD in the first place." See Board of Adjustment Minutes, Aug. 29, 1983 (Appellant's Printed Case D), at 1. Another Board member asked, "It is the hotel that makes it a resort, so how will we be guaranteed that the hotel will come about once there is the extra density?" Id. (quoting Mr. Rogers).

This question emphasizes the importance of the hotel to the Resort PUD and underscores the Board's concern that the original developer would abandon the hotel. Thus, the plain language of the Regulations and the minutes from the original Joint Planning Commission and

Board of Adjustment hearings require property granted a Resort PUD permit to contain lodging similar to a hotel or an inn.

Stowe Highlands also poses the question of whether there is any permit condition requiring a hotel on Parcel 1. Initially, it is important to note that the conditional use permit granted to Stowe Highlands and its predecessors is to construct a Resort PUD, which in and of itself requires an inn or other facilities for transient guests. §§ 18.3; 2(112); 2(146). See, Application for Hearing Before Zoning Board of Adjustment, Jan. 19, 1993; permit issued Aug. 25, 1993 (Appellant's Printed Case W), at 2–3 (showing Stowe Highlands' 1993 Zoning Permit which specifically approves the hotel). Secondly, as the Vermont Supreme Court recognized in In re Stowe Club Highlands, 164 Vt. 272, 276 (1995), "the purpose of a planned unit development is to merge zoning and subdivision requirements," and because subdivision permits approve plats of land that are later recorded, "recorded plats necessarily become subdivision permit conditions." Id.

James Connacher, agent of 232511 Investments and Stowe Highlands, stated in his affidavit that the approved site plans for the Stowe Club Resort PUD were recorded in the Town's land records. Aff. of 232511 Investments, Ltd. d/b/a Stowe Highlands, Oct. 28, 2003 (Appellant's Printed Case HH), at 1–2. The site plans show not only the general lot and parcel layout of the Resort PUD, but the plans also clearly depict an inn on Parcel 1. Stowe Club Proposed Site Plan and Master Plan, June, 1992 (Appellant's Printed Case K).

The Town Planning Commission approved the plans on October 12, 1992, and the Board of Adjustment approved the same on May 4, 1993. Stowe Planning Comm'n Minutes, Oct. 12, 1992 (Appellant's Printed Case Q); Stowe Bd. of Adjustment Minutes, May 4, 1993 (Appellant's Printed Case V); see § 18.3(1)(A). Thus, because Stowe Highlands recorded its plans with an inn on Parcel 1, the inn became a permit condition.

Whether clustered residential units are permissible in a Resort PUD is another issue raised by Stowe Highlands. The Zoning Regulations for a planned unit development state that all uses in a planned unit development are conditional if they are permitted in that zoning district. § 18.2(2). The Stowe Club Resort PUD lies within the RR3 zoning district. Single family houses are allowed in the RR3 District, but clustered residential units are not, unless the DRB approves them as a conditional use. See §§ 6.1(1); 18 Purposes; 18.2(2). If the DRB

permits clustered residential units, they must be given the "same acreage as the zone the Resort PUD is located in," or three acres per unit in the RR3 District. §§ 18.3(1)(E); 6.5(2). Clustered residential units are also permitted as part of a planned residential development (PRD). § 17.1. Thus, in the RR3 District, clustered residential units are permitted in PRDs and as conditional uses in Resort PUDs.

Nevertheless, the Resort PUD designation also requires a resort "for the purpose of providing housing, recreation and services for its transient guests and other allowed uses." § 18.3 Purposes. If no resort is constructed, Stowe Club cannot be permitted as a Resort PUD, and the developer must apply for a PRD.

The Regulations define a PRD as a parcel of land "to be developed as a single entity for dwelling units. As such, the development plan may deviate from the standard lot sizes normally required under these Regulations in order to achieve cluster development and preserve open space." § 2(95). To build clustered housing in lieu of an inn or hotel, Stowe Highlands must seek conditional use approval to develop the whole property as a PRD.[2] See §§ 4.7; 17.

The last question posed by Stowe Highlands is whether other property owners within the Resort PUD should be co-applicants in the application to switch from a Resort PUD to a PRD. If permit approval were granted, Stowe Highlands would be allowed to construct clustered residential houses on the merged Parcel 1 and Lots 21–23.

The Regulations require that the DRB consider the whole 236+/- acre property, not simply Parcel 1 and Lots 21–23, because the application affects the whole development. § 4.7. Regarding the position of the other landowners in the Resort PUD, this Court has stated that, "[u]nlike the rules applicable to Act 250 permit applications, nothing in the state zoning law [24 V.S.A. § 4449] . . . requires that the owner of the underlying land be an applicant for a zoning permit." In re: Appeal of John and Sharon O'Rear, et al., Docket No. 2-1-00 Vtec, slip op. at 3–4 (Vt. Envtl. Ct., May 15, 2001). Furthermore, the Stowe Subdivision Regulations define "Applicant" as the "owner of record," (i.e. the fee-simple title holder). The Town Subdivision Regulations make clear that the subdivision application may simply be submitted by "the owner of record." Subdivision Regulations §§ 2; 3.3(1).

While the abutting landowners do not share the position of co-applicants, they are entitled to notice when a property owner intends to develop or subdivide property. Subdivision Regulations § 3.3(2). As the fee simple title holder, Stowe Highlands is the proper applicant.

Abutting landowners in the Resort PUD need not be co-applicants for the permits, as they do not own Parcel 1 or Lots 21–23.  Instead, they could qualify as interested persons, but they lack the required property interest in Parcel 1 and Lots 21–23 to be co-applicants with Stowe Highlands. 24 V.S.A. § 4465.

Accordingly, based on the foregoing, it is hereby ordered and adjudged that Appellant's motion for summary judgment is **DENIED** as to Questions 1, 2, and 3, but **GRANTED** as to Question 5.  Appellee-Town's, motion for summary judgment is **GRANTED** as to Questions 1, 2, and 3, but **DENIED** as to Question 5, thereby concluding this appeal.

Done at Berlin, Vermont, this 26th day of April, 2005

_____
Thomas S. Durkin
Environmental Judge

---

[1] Throughout this decision, "Stowe Highlands" refers to the Appellant-Applicant, while all references to Stowe Club, Stowe Club Highlands, or the Stowe Club Highlands Resort PUD refer to the property and the development.

[2] Stowe Highlands may also develop Parcel 1 and Lots 21-23 as a "normal" subdivision, but that not only requires subdivision review and forgoing clustered development, but also a decrease in the number of homes Stowe Highlands wishes to build because the parcel is twenty-four acres and the zoning district's minimum lot size is three acres.  § 6.5(2).  Due to these lot restrictions, Stowe Highlands may be limited to only eight houses on the consolidated lots, instead of fourteen.  That specific question is not before us at this time.